IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

JOSEPH ALTIER, et al.,

      Plaintiffs,

v.                            CASE NO. 1:13-cv-164-MW-GRJ

FEDERAL NATIONAL MORTGAGE
ASSOCIATION, et al.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

Pending before the Court are: (1) Defendants Suntrust Bank, N.A. and Suntrust Mortgage, Inc.'s Dispositive Motion to Dismiss Plaintiff's Amended Complaint, Doc. 21; and (2) Defendants Federal National Mortgage Association and Mortgage Electronic Registration System, Inc.'s Joint Motion to Dismiss Amended Verified Complaint. Doc. 24. Plaintiffs have filed a response, Doc. 25, directed only to Defendants Federal Nation Mortgage Association and Mortgage Electronic Registration System, Inc.'s motion to dismiss. Because Plaintiffs are proceeding *pro se* – and in view of the fact that all of the Defendants have made similar arguments in requesting dismissal of the Amended Complaint – the Court will consider Plaintiffs' response as also a response to Suntrust's motion to dismiss. For the reasons discussed below, the motions to dismiss are due to be granted.

## I. Introduction

Plaintiffs initiated this action by filing a complaint to quiet title in the Circuit Court

of the Eighth Judicial Circuit in and for Alachua County, Florida. Doc. 1, Ex. E. On or about July 16, 2013, Plaintiffs filed an amended verified complaint, which is the operative complaint in this case. On August 26, 2013, Defendants Suntrust Bank ("STB") and Suntrust Mortgage ("STM") removed the case to federal court.[1] Mortgage Electronic Registration System, Inc. ("MERS") and Federal National Mortgage Association ("Fannie Mae") consented to the removal. Docs. 9, 10.

While the Amended Complaint is not a model of clarity the following material facts and events are disclosed in the Amended Complaint.

Plaintiffs are the owners of a single family residence located at 216 NE 10th Avenue, Gainesville, Florida. (the "Property".) On November 2, 2005, Plaintiffs executed and delivered a promissory note (the "Note") and mortgage (the "Mortgage") on the Property in the principal amount of $166,000 in favor of STM. STM is listed as the "Lender" on the Mortgage and MERS is identified as the mortgagee on the Mortgage. Further, it is expressly stated in the Mortgage that "MERS is the mortgagee [and] ... is acting solely as a nominee for Lender and Lender's successors and assigns." Doc. 1, Ex. D. On September 6, 2012[2] MERS, acting as the nominee for STM, assigned the

---

[1] As Defendants STB and STM explained in footnote three of the Notice of Removal (Doc. 1), although "Plaintiffs have named Suntrust Bank, N.A. as the only Suntrust entity in the State Court Action, a review of the docket in the State Court Action reveals Suntrust Mortgage to be a party Defendant. Further, the Plaintiffs have attached a mortgage, presumptively the one they seek to invalidate, to their Amended Complaint that names Suntrust Mortgage as the Lender. As such, and in an abundance of caution, Suntrust Mortgage has appeared as a party defendant in order to protect any interests it may have in the underlying matter."

[2] Plaintiffs allege that the Assignment was recorded on December 6, 2011. Notwithstanding this discrepancy Plaintiffs and Defendants all reference the identical recording information for the Assignment. (OR Book 4143, page 1233 of the Public Records of Alachua County, Florida.) The Assignment bears the date of September 6, 2012 – and thus Plaintiffs may have incorrectly listed the date. The Court, however, does not need to resolve this discrepancy in order to rule on the pending motions to dismiss.

Mortgage to Fannie Mae and thereafter recorded the assignment on October 17, 2012 in the Public Records of Alachua County, Florida.  (The "Assignment.")

Plaintiffs' Amended Complaint purports to bring the following claims.

• A claim for fraud in the execution, alleging that the Assignment was fraudulently executed.

• A claim for misrepresentation alleging that STM and Fannie Mae misrepresented that Plaintiffs owed them money.

• A claim alleging that STM abandoned its interest in the Property by virtue of the Assignment.

• A claim alleging that the Note and Mortgage are void because MERS and STM violated the law by executing the Assignment and securitizing the loan.

• A claim alleging that the Mortgage is void because it was separated from the Note and because MERS did not have authority to assign the Mortgage.

• A claim against STM and MERS for violation of the Truth in Lending Act ("TILA") for allegedly failing to timely record the Assignment.

• A claim against all Defendants for violation of the Florida Civil Remedies for Criminal Practices Act.

As relief, Plaintiffs request the Court to enter an order quieting title to the Property and enter a judgment that the Defendants and their successors and assigns be forever barred from asserting any right, lien, title or interest in the Property. In short, Plaintiffs are requesting the Court to void the Mortgage on the Property, so that the

Plaintiffs are no longer obligated to repay the loan.

There are two fundamental problems with the Amended Complaint. On a procedural level – as a matter of pleading – the Amended Complaint is not a model of clarity primarily because Plaintiffs improperly have lumped together all of the Defendants, making it difficult to discern which allegations relate to which Defendant. Additionally, because Plaintiffs incorporate by reference many of the preceding allegations in subsequent claims, the allegations are contradictory at worst and confusing at best. Lastly, the allegations in several of the claims – fraud and misrepresentation – are conclusional and lack any specificity sufficient to enable a defendant to file an informed response. Where a *pro se* plaintiff, as here, files a complaint that is in artfully plead the Court normally would issue an order notifying the *pro se* litigant of the problems in the complaint and provide the litigant with an opportunity to file an amended complaint. If that was the extent of the problems in this case the Court would have done just that.

The problems with the Amended Complaint, however, transcend pleading deficiencies and involve substantive deficiencies that cannot be cured through amendment. For this reason – and as explained below – the Amended Complaint is due to be dismissed because Plaintiffs have not – and cannot – allege causes of action to quiet title upon which relief may be granted.

## II.  Standard of Review

 For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to Plaintiffs, consider the allegations of the

complaint as true, and accept all reasonable inferences therefrom. *See, e.g., Jackson v. Okaloosa County, Fla.*, 21 F.3d 1532, 1534 (11th Cir.1994). Furthermore, the Court must limit its consideration to the complaint and written instruments attached as exhibits. Fed R. Civ. P. 10(c); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir.1993).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Supreme Court articulated a two-pronged approach for evaluating a motion to dismiss under Rule 12(b)(6): The court must first determine what factual allegations in the complaint are entitled to a presumption of veracity, and then assess whether these facts give rise to an entitlement for relief. In determining whether factual allegations are entitled to the presumption of truth, the Court stated that it was not whether the facts are "unrealistic or nonsensical" or even "extravagantly fanciful," but rather it is their conclusory nature that "disentitles them to the presumption of truth." *Id.* at 679. Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007). "While the pleadings of *pro se* litigants are 'liberally construed,' they must still comply with procedural rules governing the proper form of pleadings." *Hopkins v. Saint Lucie County School Bd.,* 2010 WL 3995824, **1 (11th Cir. 2010) (unpublished) (citations omitted) (applying pleading standards of *Iqbal* and *Twombly* to *pro se* complaint).[3]

### III.  Discussion

Under Florida law, in order to bring a claim for quiet title a plaintiff must establish

---

[3] Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority.

that (1) the plaintiff holds title to the property in question; and (2) a cloud on title exists. *Stark v. Frayer, et al.*, 67 So. 2d 237 (Fla. 1953). There is no challenge to the fact that Plaintiffs hold title to the Property. Although it is unclear exactly what Plaintiffs allege is a cloud on their title to the Property, the "cloud" must be one of two recorded interests: (i) the Mortgage recorded on November 8, 2005; or (ii) the Assignment to Fannie Mae, recorded on October 17, 2012. The problem is that Plaintiffs have no standing to challenge the validity of the Assignment because they are not a party to the Assignment. Second – and independent of the fact that Plaintiffs lack standing to challenge the validity of the Assignment – Plaintiffs' legal challenges to the validity of the Assignment, and to the continued validity of the Mortgage, fail as a matter of law.

### A. *Plaintiffs' Lack Standing to Challenge the Validity of the Assignment*

To the extent that Plaintiffs challenge the validity of the Assignment either because Plaintiffs allege MERS does not have the authority to assign the Mortgage – or because the Assignment was executed by "robo-signers" – Plaintiffs do not have standing to raise a challenge to the validity of an assignment because Plaintiffs are not parties to the Assignment. *Rhodes v. JP Morgan Chase Bank, N.A.*, No. 12-80368-CIV, 2012 WL 5411062 * 4 (S.D. Fla. Nov. 6, 2012); *In re Canellas,* No. 6:11-cv-1247-Orl-28DAB*,* 2012 WL 868772, at * 3 (M.D. Fla. Mar. 14, 2012*); Correia v. Deutsche Nat'l Trust Co.*, 425 B.R. 319, 324 (B.A.P. 1st Cir. 2011)(if "[t]he Debtors cannot show they were a party to the contract," they lack standing to challenge the assignment of their mortgage.) Thus, Plaintiffs cannot challenge the validity of the Assignment as part of their request to quiet title to the Property.

**B.**     ***Plaintiffs' Challenges to the Validity of the Mortgage and the Assignment Fail As a Matter of Law***

Even assuming, however, that Plaintiffs had standing to challenge the validity of the Assignment, as a matter of law, the assignment of the mortgage does not change the nature of the mortgagor's interest . *In re Halabi*, 184 F.3d 1335 (11th Cir. 1999). Thus, even assuming there were deficiencies in the Assignment (which there were not) these deficiencies would not void Plaintiffs' obligations under the Note and the Mortgage and thus would not create a cloud on title.

Plaintiffs' challenges, however, to the Assignment, based upon the lack of authority of MERS to execute the Assignment, and based upon the transfer and securitization of the mortgage, have no merit and therefore are legally insufficient to support the argument that the Mortgage and Assignment create a cloud on the title to the Property.

Plaintiffs' claim that the Mortgage and Assignment are void is premised upon the following theories, each of which has no legal support.

### 1.     *Splitting the Note and Mortgage*

First, Plaintiffs contend that the Mortgage is invalid because the Mortgage was severed or split from the Note when the Mortgage was assigned by MERS to Fannie Mae. According to Plaintiffs, the securitization of the Mortgage caused the Note and Mortgage to be permanently severed from each other, thus, making the Note and Mortgage void and unenforceable.  Plaintiffs argument misconstrues the law concerning the relationship between a note and the security instrument. Although under Florida law, the assignment of a security agreement without pledge or assignment of the

underlying note creates no rights for the assignee or pledgee, *Sobel v Mutual Dev., Inc.,* 313 So. 2d 77, 78 (Fla. Dist. Ct. App. 1975), this only means that the holder of the mortgage has no right to enforce the mortgage, if the holder does not also hold the promissory note. This does not mean – as Plaintiffs say - that a mortgage is invalid, resulting in clear title to the homeowner, merely as a result of assigning it without the assignment of the note to the same entity. *Roder v. RH Funding Company*, No. 6:12-cv-1076-Orl-36KRS, 2012 WL 6799690, at *3 (M.D. Fal. Dec. 10, 2012). Thus, even assuming only the Mortgage was assigned, without a corresponding assignment of the Note, this would only effect the ability of the holder of the Mortgage to foreclose but would not effect the validity of the Mortgage. Because the Mortgage would not be voided by an assignment of the Mortgage only, the Mortgage does not create a cloud on title and thus Plaintiffs' have failed to state a claim upon which relief may be granted based upon their claim that the Note and Mortgage were split.

This conclusion is fully supported by decisions from courts in other jurisdictions, all of which have rejected the argument that separation of the note and mortgage renders the mortgage void. *See, e.g. Cornelius v. Bank of America, N.A.*, No. 1:12-cv-0585-JEC, 2012 WL 4468746, at *3 (N.D. Ga. Sept. 27, 2012)("Plaintiff's persistent argument that separating his Note from the Security Deed on the property renders his loan obligation a nullity is frivolous. No Court has held that 'splitting' a note from a deed destroys a debtor's underlying obligation to pay his mortgage."); *Edelstein v. Bank of New York Mellon,* 286 P. 3d 249, 260 (Nev. 2012)("separation is not irreparably or fatal to either the promissory note or the deed of trust."); *Cervantes v. Countrywide Home*

*Loans, Inc.,* 656 F. 3d 1034, 1044 (9th Cir. 2011("the notes and deeds are not

irreparably split: the split only renders the mortgage unenforceable if MERS or the

trustee, as nominal holders of the deeds, are not agents of the lenders."); *In re*

*Mortgage Electronic Registration Systems (MERS) Litigation,* MDL No. 09-2119-JAT,

2011 WL 251453, at *10 (D. Ariz. Jan. 25, 2011)("Plaintiffs have not cited any legal

authority for the proposition that a borrower may quiet title when the note has been split.

Therefore, the Court will dismiss Plaintiffs' claims for quiet title.")

Accordingly, even if the Note and Mortgage were split when the Mortgage was

securitized, as Plaintiffs contend, the separation of the Note and Mortgage does not

make the Mortgage (or the Note) voidable. Therefore, because Plaintiffs are still

obligated under the Note and Mortgage there is no legal basis to quiet title to the

Property. Plaintiffs' claim seeking to quiet title on this theory is due to be dismissed for

failing to state a cause of action upon which relief may be granted.

### 2. *MERS Was Legally Authorized to Execute the Assignment*

Plaintiffs also contend that the Assignment, and in turn, the Mortgage are void

because MERS had no authority to execute the Assignment and it was fraudulent for

MERS to have done so. This claim – like Plaintiffs' other claims – has no legal support

and is directly at odds with Florida law, and the law from other jurisdictions, concerning

the authority of MERS to assign mortgages.[4]

---

[4] A brief overview of MERS is necessary to understand the claims in this case. MERS was
created in the mid 1990s to facilitate the transfer of large volumes of mortgages from one holder to
another, which typically is required in the mortgage-backed securities industry. The MERS system is a
national electronic database that tracks changes in mortgage servicing and beneficial ownership interests
in residential mortgage loans. Under the MERS system, MERS serves as the nominee for numerous
owners of the promissory note and is supposed to keep track of which actual owner owns the promissory
note at any given time. The name on the public records with the county, however, never changes from

The Mortgage in this case expressly states on the first page of the Mortgage:

(C)    "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender [STM] and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument......

Doc. 1, Ex. D.

On the third page of the Mortgage Plaintiffs acknowledge their agreement that:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law of custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument.

*Id.*

Challenges to the authority of MERS to assign mortgages and to seek foreclosure of mortgages – containing language almost identical to the language in the mortgage in this case –  have been rejected without exception by Florida courts.[5] *Taylor v. Deutsche Bank Nat'l. Trust Co.*, 44 So. 3d 618 (Fla. Dist. Ct. App. 2010)(valid assignment from MERS to another lender gave that lender standing to bring foreclosure action); *Mortgage Elec. Registration Sys., Inc. v. Azize*, 965 So. 2d 151, 153 (Fla. Dist. Ct. App. 2007)(MERS had standing to enforce the note and foreclose the mortgage because it served as the owner and holder of the note as nominee for the lender, and it

---

MERS. *See Simon v. Mortgage Electronic Registration Systems, Inc.*, No. 13-80190-CIV, 2013 WL 3873956 (S.D. Fla. July 25, 2013).

[5] Florida law controls the determination of Plaintiff's common law claims seeking to quiet title. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). In applying Florida law, where the highest court in the state has rendered no decision on point, the Court must follow the opinions of Florida's intermediate appellate courts, unless the court is "convinced that the highest court would decide otherwise." *Bailey v. Southern Pacific Transp. Co.*, 613 F. 2d 1385, 1388 (5th Cir.), *cert denied,* 449 U.S. 836 (1980).

could enforce the note on the lender's behalf); *Mortg Elec. Regsitration Sys., Inc. v. Revoredo*, 955 So. 2d 33 (Fla. Dist. Ct. App. 2007); *Simon*, 2013 WL 3873956, at *5 ("And, in Florida, courts have held that the language contained in the Mortgage whereby the borrower acknowledges and agrees that MERS may serve as nominee for the lender and its successors and assigns and that MERS enjoys the right to exercise all of the lender's interests ... bestows upon MERS the status of a 'nonholder in possession ... who has the rights of a holder,' under Section 673.3011, Fla. Stat.").

Accordingly, under Florida law, MERS has the authority to assign the Mortgage and the authority to foreclose the Mortgage, if it so chooses, as the agent for the lender. Thus, Plaintiffs' challenge to the validity of the Mortgage and the validity of Assignment because of the use of MERS, fails as a matter of law. Because neither the Mortgage nor the Assignment are void because MERS was utilized there is no cloud on the title to the Property and no cause of action to quiet title. *Pounds v. Countrywide Home Loans, Inc.*, No. 12-60692-CIV, 2012 WL 4194420, at *3 (S.D. Fla. Sept. 19, 2012)("[the] language in the Mortgage Agreement gave MERS the right to enforce the note – to third parties, in this case Bank of New York Mellon... Accordingly, the Court finds that MERS' assignment was valid and does not cloud the title to Plaintiffs' property.")

### 3. Transfer of the Loan Does Not Void the Mortgage

Plaintiffs assert that the Mortgage is void because STM has been paid in full under the Note when the Mortgage was securitized and sold on the secondary market. This argument is frivolous. The transfer of a mortgage on the secondary market does not discharge a mortgagor's obligation under a mortgage and note even if the original

lender was paid. *Rhodes*, 2012 WL 2504043, at *3.; *Horvath v. Bank of New York,*

*N.A.*, No. 1:09-cv-01129, 2010 WL 538039, at *2 (E.D. Va. Jan. 29, 2010)(dismissing

the plaintiff's quiet title claim and noting that the plaintiff was not discharged from the

obligation under the note because of the original lender's sale and assignment of the

notes.)  In addition to being legally incorrect, Plaintiffs' theory would result in a windfall

to mortgagors, like the Plaintiffs, whose mortgages are sold on the secondary market.

The bottom line is Plaintiffs' claim has no legal support and makes no common sense.

The claim is, therefore, due to be rejected summarily.

> **C.** **Each of the Purported Claims in Plaintiffs' Amended Complaint Fail to State a Cause of Action Upon Which Relief May Be Granted**

In addition to the defects in the Amended Complaint discussed above – which

are fatal to  Plaintiffs' quite title action – each of the claims in the Amended Complaint,

fails for the following additional reasons.

> **1.** **Fraud in the Execution**

With regard to Plaintiffs' claim for fraud in the execution, Plaintiffs allege that the

signatures on the assignment of the mortgage are notarized and signed by "robo

signers."  Plaintiffs further allege – without pointing to specific documents or specific

signatures –  that they "question the authenticity and validity of all the signatures of all

parties."  Doc. 1, Ex. E, ¶ 15.

As discussed above, Plaintiffs do not have standing to challenge the validity of

the Assignment because whether the Assignment is valid or not does not void the

Mortgage. In addition to this fatal defect, Plaintiff's claim for fraud in the execution also

fails because the claim does not comply with the stringent pleading standards of Fed. R. Civ. P. 9(b).  Rule 9(b) provides in relevant part that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  To meet the specificity pleading standard in Rule 9(b) a party must allege and identify: (1) whether the fraudulent statements that were made were contained in specific documents or whether the fraudulent statements were oral representations or whether the fraud was the omission of a material statement; (2) the time and place of each statement and the person responsible for making (or, in the case of omissions, not making) the statements; (3) the content of such statements and the manner in which they misled the plaintiffs; and (4) what the defendants obtained as a consequence of the fraud.  *Ziemba v.  Cascase Intern., Inc*., 256 F.3d 1194 (11th Cir. 2001).  The particularity requirement of Rule 9(b) serves an important function by notifying defendants of the exact conduct which is alleged to be fraudulent and thus protects defendants from false charges of fraud.  *Durham v. Bus. Management Assocs.*, 847 F.2d 1505,1511 (11th Cir. 1988).

Plaintiffs' conclusory allegations –  with no specifics or details, that "robo-signers" executed the assignment of the Mortgage – falls well short of meeting the specificity standard of Rule 9(b).  Furthermore, simply alleging in conclusional and general terms – as Plaintiffs have –  that they "question the authenticity and validity of all the signatures of all parties," without even mentioning the documents or the signatures which they contend are not authentic fails to satisfy the specificity requirements of  Rule 9(b).

Accordingly, for these reasons, Plaintiffs' claim purporting to allege a cause of

action for fraud in the execution is due to be dismissed.  Because the alleged fraud in the execution must, by necessity, relate to either the Mortgage or the Assignment – as these are the only two instruments Plaintiffs suggest are void and cloud the title to the Property – there is no reason to permit the Plaintiffs to amend the complaint because it would be futile to do so.

### 2. *Misrepresentation*

With regard to Plaintiffs' claim for misrepresentation,  Plaintiffs allege that "defendants had actual knowledge that its written statements as to alleged ownership of the Plaintiffs mortgage loan, and legal entitlement to demand monies from Plaintiff were false statements of material fact, which were false when made, and known by said Defendants to be false when made."  Doc. 1, Ex. E, ¶ 18. Plaintiffs further allege that Defendants made the false statements with the intent that Plaintiffs rely on the statements, and that Plaintiffs did in fact rely, and as such have suffered damages in the form of slander of title. There are two problems with this claim.

First, this claim is premised upon Plaintiffs' arguments that MERS was not authorized to assign the Mortgage and upon Plaintiffs' argument that the Mortgage is void because the Note and Mortgage were split when the Mortgage was transferred as part of the securization of the Mortgage. As discussed above these claims fail as a matter of law and therefore any claim that Defendants misrepresented ownership or entitlement to demand payment must also fail.

Secondly, a claim for misrepresentation is subject to the same strict pleading standard applicable to a claim for fraud, under Fed. R. Civ. P. 9(b).  Because Plaintiffs

have only alleged conclusional allegations of misrepresentation, without any reference to who, what, where, or when, the claim is deficient for failing to comply with the pleading standards under Rule 9(b).  And for the same reasons that it would be futile to allow Plaintiffs' to amend their fraud claim, it would be futile to allow Plaintiffs to amend their claim for misrepresentation.

### 3.   *Violation of TILA*

Plaintiffs' also have attempted to bring a claim for violation of the Truth in Lending Act (TILA). This claim – even if valid – would not be a sufficient ground to quiet title to the Property. A violation of TILA, if successful, would give rise to a claim for damages or possibly rescission. Plaintiffs, however, have not requested damages or rescission in the prayer for relief in the Amended Complaint. It makes no difference, however, because Plaintiffs have failed to state a claim for violation of TILA.

 Relying upon 15 U.S.C. § 1641(f)(2), Plaintiffs allege that Defendants violated TILA by failing to timely record the assignment of mortgage.  There are two fundamental problems with this claim.

First, 15 U.S.C. § 1641(f)(2) – the statute cited by Plaintiffs –  does not contain any requirement for recording the assignment. Instead, the statute deals with an entirely different obligation of a servicer of a loan.[6]

---

[6] (f) Treatment of servicer
(2) Servicer not treated as owner on basis of assignment for administrative convenience
A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as the owner of the obligation for purposes of this section on the basis of an assignment of the obligation from the creditor or another assignee to the servicer solely for the administrative convenience of the servicer in servicing the obligation. Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the

Second, to the extent that the citation to § 1641(f)(2) was a scrivener's error, and instead Plaintiffs intended to rely upon § 1641(g) as support for their claim, the claim still fails. Section 1641(g) only requires the assignee of the mortgage to provide *notice* to the borrower of the assignment.[7]  This section of TILA does not create any obligation to record the Assignment but only an obligation of the assignee to provide *notice* of the Assignment to the borrower.  Thus, as to STM – who is the original lender and not the assignee-- it had no obligation even to notify the Plaintiffs of the Assignment. And while the assignee, Fannie Mae, may have had an obligation to *notify* the Plaintiffs of the Assignment it had no duty under TILA to record the Assignment. Because the Plaintiffs do not allege that the Defendants failed to notify them of the Assignment – but only that

---

servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation.

[7] (g) Notice of new creditor

(1) In general

In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including--

(A) the identity, address, telephone number of the new creditor;
(B) the date of transfer;

(C) how to reach an agent or party having authority to act on behalf of the new creditor;

(D) the location of the place where transfer of ownership of the debt is recorded; and
(E) any other relevant information regarding the new creditor.

15 U.S.C. § 1641(g).

the Defendants did not record the Assignment[8] – the Plaintiffs have failed to state a

cause of action under TILA upon which relief may be granted. This claim is, therefore,

due to be dismissed with prejudice as to all of the Defendants.

Furthermore, even if Plaintiffs were to allege that they were not notified of the

Assignment Plaintiffs still would fail to allege a claim for violation of TILA because

Plaintiffs have not alleged detrimental reliance on the purported non-disclosure, a

necessary requirement to state a claim for violation of TILA. *Turner v. Beneficial Corp.*,

242 F.3d 1023 (11th Cir. 2001).

Accordingly, for these reasons, the Court concludes that Plaintiffs have failed to

state a claim for violation of TILA and therefore Plaintiffs' claim for violation of TILA is

due to be dismissed with prejudice.

### 4. *Violation of Florida Civil Remedies For Criminal Practices Act*

Lastly, Plaintiffs attempt to bring a claim against all Defendants for violation of

the Florida Civil Remedies for Criminal Practices Act, Fla. Stat. §§ 772.101. (The

"Act".)[9] This claim – like the claim for fraud – contains only conclusional allegations and

fails to specify with particularity the basis for the claim as required by Rule 9(b) of the

Federal Rules of Civil Procedure.

---

[8] Plaintiffs' allegation in their Amended Complaint that the Assignment was not recorded appears to be directly refuted by Plaintiffs' statement in paragraph 12 of the Amended Complaint that: "[M]ortgage Electronic Registration Systems, Inc., as nominee for Suntrust recorded an Assignment of Mortgage in the Official Records of Alachua County, Florida, Book 4143, Page 1233, Instrument Number 2747212 to Federal National Mortgage association. Doc. 1, Ex. E. ¶ 12.

[9] Plaintiffs have incorrectly referred to the provisions of Chapter 772 as Florida's RICO Act. Florida's Racketeer Influenced and Corrupt Organization Act, is contained in Fla. Stat. §§ 895.01-895.06. Although the two chapters are similar the Florida RICO Act contains an entirely different set of criminal statutes that do not provide any private civil remedy.

According to Plaintiffs, Defendants violated the Act because they "intentionally manufactured a scheme to defraud homeowners on a nationalized level whereby the Defendants, through the use of the mails, the public records, and the Courts, intentionally devised false and fraudulent documents relating to the claimed alleged ownership and 'holder' status of mortgage loans when the Defendants had actual knowledge they had no such status, doing so through perjured documents and material misrepresentations with the specific intent to commit theft of residential real property." Doc. 1, Ex. E, ¶ 58.

To demonstrate an injury in violation of Fla. Stat. § 772.103, Plaintiffs must allege that Defendants (1) received proceeds, (2) from either a pattern of criminal activity or through the collection of an unlawful debt, and (3) used or invested any part of such proceeds, (4) in the acquisition of any title to, or any right, interest or equity in, real property or in the establishment or operation of any enterprise. The complaint is devoid of allegations specifying the particulars of the alleged pattern of criminal activity. Instead, in violation of Rule 9(b) of the Federal Rules of Civil Procedure, Plaintiffs have lumped together all of the Defendants in a generalized scheme without any attempt to define the scheme, the fraud, the alleged criminal activity or most importantly how the Plaintiffs were injured by the scheme.

And to the extent that Plaintiffs' claim is premised upon Plaintiffs' challenges to the use of the MERS system or upon the fact that the mortgage was securitized and sold on the secondary market, these actions do not give rise to viable claims for the reasons discussed above. Therefore, Plaintiffs have not and cannot demonstrate the

required pattern of criminal activity by Defendants or demonstrate that the Defendants collected an unlawful debt, predicates to bringing a claim under the Act.

Accordingly, Plaintiffs' attempt to transform, what appears to be a frivolous attempt to avoid paying on their mortgage, into a claim for violation of the Act fails and is due to be dismissed.

## IV. <u>Recommendation</u>

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants Suntrust Bank, N.A. and Suntrust Mortgage, Inc.'s Dispositive Motion to Dismiss Plaintiff's Amended Complaint, Doc. 21, should be **GRANTED** and Defendants Federal National Mortgage Association and Mortgage Electronic Registration System, Inc.'s Joint Motion to Dismiss Amended Verified Complaint, Doc. 24, should be **GRANTED**. Plaintiffs' Amended Complaint should be **DISMISSED with prejudice** and Plaintiffs should not be given an opportunity to further amend their Amended Complaint because it would be futile to do so.

**IN CHAMBERS** at Gainesville, Florida this 8th day of November 2013.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

<u>**NOTICE TO THE PARTIES**</u>
**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**